IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GARY LEE BOULDIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:11-cv-01019 |
| v. ) | |
| ) | Judge Nixon |
| CAROLYN W. COLVIN, ) | Magistrate Judge Knowles |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Plaintiff Gary Lee Bouldin's Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 9), filed with a Memorandum in Support (Doc. No. 10). Defendant Commissioner of Social Security filed a Response opposing the Motion. (Doc. No. 15.) Subsequently, Magistrate Judge Knowles issued a Report and Recommendation ("Report"), recommending that Plaintiff's Motion be denied and the decision of the Commissioner be affirmed. (Doc. No. 16 at 33.) Plaintiff then filed a Motion for De Novo Determination by District Judge (Doc. No. 17), with a Memorandum in Support (Doc. No. 18). For the reasons stated below, the Court **ADOPTS** the Report in its entirety, **DENIES** Plaintiff's Motion, and **AFFIRMS** the decision of the Commissioner.

I. BACKGROUND[1]

*A. Procedural Background*

Plaintiff filed applications for Title II Disability Insurance Benefits ("DIB") on March 25, 2009 (Tr. 127–28), and Title XVI Supplemental Security Income ("SSI") on March 30, 2009 (Tr.

---
[1] An electronic copy of the administrative record is docketed in this case at Doc. No. 7.

1

123–26). For both applications, Plaintiff declared a disability onset date of December 1, 2004. (Tr. 123, 127.) The Social Security Administration ("SSA") initially denied the SSI claim on April 6, 2009 (Tr. 63–68), and the DIB claim on May 12, 2009 (Tr. 69–71). Plaintiff only appealed the DIB claim, which was denied again after reconsideration on June 3, 2009. (Tr. 73–75.)

Plaintiff filed a timely written request for a hearing before an Administrative Law Judge ("ALJ") on July 9, 2009. (Tr. 17.) The hearing took place before ALJ K. Dickson Grissom on June 14, 2010, during which Plaintiff appeared with counsel. (Tr. 33.) Plaintiff and Vocational Expert Edward Smith testified at the hearing. (Tr. 33–58.) ALJ Grissom denied Plaintiff's claim on July 8, 2010, making the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 1, 2004 through his date last insured of December 31, 2006 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following medically determinable impairments: Hypertension; Prostate Cancer successfully treated with implanted radiation seeds (20 CFR 404.1521 *et seq.*).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.*).

5. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 1, 2004, the alleged onset date, through December 31, 2006, the date last insured (20 CFR 404.1520(c)).

(Tr. 19–27.)

Plaintiff filed a request for review of the decision on July 27, 2010. (Tr. 12.) The Appeals Council denied Plaintiff's request on August 26, 2011, rendering ALJ Grissom's decision the final decision of the Commissioner. (Tr. 1–3.) Plaintiff filed this action on October 26, 2011, seeking judicial review of the Commissioner's final decision under 42 U.S.C. §§ 405(g), 1386(c). (Doc. No. 1.)

Pursuant to Judge Knowles's January 13, 2012, order (Doc. No. 8), Plaintiff filed a Motion for Judgment on the Administrative Record (Doc. No. 9) along with a Memorandum in Support (Doc. No. 10) on February 3, 2012. The Commissioner filed a Response on May 4, 2012 (Doc. No. 15), and Judge Knowles issued his Report recommending Plaintiff's Motion be denied on May 24, 2013. (Doc. No. 16.)

On June 7, 2013, Plaintiff filed a Motion for De Novo Determination by District Judge (Doc. No. 17), along with a Memorandum in Support (Doc. No. 18), asserting three objections to the Report. Specifically, Plaintiff objects to the Magistrate's findings that:

1. The ALJ properly found Plaintiff did not have a severe mental impairment before his date last insured.

2. The ALJ properly evaluated Dr. Gale's opinions and articulated his reasons for discounting them.

3. The ALJ appropriately applied SSR 83-20 in establishing the onset date of Plaintiff's disability.

(Doc. No. 18 at 6.) The Commissioner filed a response to Plaintiff's objections on June 21, 2013. (Doc. No. 20.) The Court now reviews Judge Knowles's Report, considering Plaintiff's Motion.

*B. Factual Background*

Plaintiff was born on March 10, 1955, and claims disability beginning on December 1, 2004, for diabetes, hypertension, kidney problems, Bell's Palsy, vision problems, and anxiety. (Tr. 72, 123, 179). Subsequently, Plaintiff added claims due to Asperger's Syndrome and Borderline Intellectual Functioning. (Tr. 22, 492.) Plaintiff's date last insured was December 31, 2006. (Tr. 83.)

1. Physical History

On June 2, 2004, Plaintiff was diagnosed with prostate cancer after being referred to Dr. Carl Rosen by his primary care physician. (Tr. 311.) In December 2004, Oncologist Dr. James Gray implanted radiation seeds into Plaintiff's prostate to treat the cancer. (Tr. 318–406.) The treatment was successful, and Plaintiff's cancer has been in remission since August 2005 or before. (Tr. 318–21, 324–25, 334, 337–38, 591–603.)

On May 19, 2004, Plaintiff was seen at Grundy County Primary Care Center, at which time he complained of a history of hypertension. (Tr. 314–16.) Dr. Hunter Hansen began treating Plaintiff's hypertension with medication on June 26, 2006. (Tr. 284–308.) From that time until the date last insured, Plaintiff's hypertension was treated with medication and recommendations of exercise. (*Id.*)

After Plaintiff's date last insured, he was treated for hypertension (Tr. 255, 284–308), diabetes (Tr. 457–60, 561), and Bell's palsy with related vision problems (Tr. 377–82, 420, 445–48). Plaintiff has continued taking medication for his hypertension as prescribed by treating physicians Dr. Oladapo Omitowoju in September 2008 (Tr. 355–375) and Dr. Tenzing Chounzom in June 2008 (Tr. 452–60). Dr. Chounzom additionally diagnosed and treated

4

Plaintiff for new onset Type II Diabetes in June 2008. (Tr. 454–60, 561.) Plaintiff was also treated for Bell's palsy and resulting vision problems in 2008 and 2009. (Tr. 377, 408–89.)

2. Psychological History

On June 9, 2009, Dr. Scott Gale examined Plaintiff and prepared a psychological report and mental assessment. (Tr. 490–504.) He diagnosed Plaintiff with Asperger's syndrome, anxiety disorder not otherwise specified, and borderline intellectual functioning. (Tr. 501.) However, Dr. Gale only evaluated Plaintiff's mental health and did not treat Plaintiff for any of these conditions. (*See* Tr. 490–504, 579.) Though other doctors noted Plaintiff's mental limitations, none made a diagnosis. (*See, e.g.*, Tr. 330–32, 348–53, 415–17.)

On May 11, 2010, Dr. Gale supplemented his initial report, though he had not seen Plaintiff since the 2009 visit. (Tr. 579.) Dr. Gale's supplement indicated that Plaintiff's mental impairments had existed for a continuous period of at least twelve months before his diagnosis, and commenced in 1970. (*Id.*) Dr. Gale relied on comments that Plaintiff was considered odd in high school and that Plaintiff's parents tried to accommodate his needs by not letting him drive and by finding him employment while they could protect him, as support for his findings. (*Id.*)

In 1970, while Plaintiff was in the tenth grade, he took a Differential Aptitude Test. (Tr. 148–49.) He scored in the 65th percentile for spelling, but did not score above the 20th percentile in any other category.[2] (*Id.*) Plaintiff's high school transcript shows he graduated just below the middle of the class and that he received mostly Bs, some As, and a few Cs. (Tr. 147–48.)

---

[2] Other categories included verbal reasoning, numerical ability, abstract reasoning, clerical spelling, mechanical reasoning, space relations, and grammar. (Tr. 149.)

5

After high school, Plaintiff attended Lipscomb University for three and a half years. (Tr. 38, 146.) He was not allowed to finish his last year because of his poor academic performance, though his transcript reveals he did receive one A and several Bs throughout his time there. (*Id.*)

### 3. Employment History

After being placed on academic suspension because of poor grades in 1976, Plaintiff returned home to live with his parents. (Tr. 38, 124.) He worked full-time as a relief person at a water utility plant from 1984 to 1989, performing tasks such as checking the pH levels of water, working with chemicals, and mopping floors. (Tr. 170, 172.) Plaintiff worked under the supervision of his father, who was the plant manager. (Tr. 40, 494.) Plaintiff was fired after a new manager began supervising him. (Tr. 277.)

Plaintiff's next employment was from 1997 to 2001 when he worked part-time as a custodian on his father's farm. (Tr. 40–42, 170, 173.) This work consisted of chores around the property, such as yard work and driving to the dump. (Tr. 173.) The job ended when Plaintiff's father's died in 2002. (Tr. 50, 170.)

Since 1999, Plaintiff has worked as a custodian at his church. (Tr. 50, 154, 170–71.) He works two hours per day, one day per week. (Tr. 171.)

## II.   STANDARD OF REVIEW

The Court's review of the Magistrate's Report is *de novo*. 28 U.S.C. § 636(b) (2012). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2012).

Accordingly, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

A finding of substantial evidence holds significant weight on appeal. "Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999); *see also Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

As Judge Knowles indicated, at the administrative level of review, a claimant's case is considered under a five-step sequential evaluation process:

7

(1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.* what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant can perform, given his or her age, experience, education, and residual functional capacity.

(Doc. No. 16 at 5–6 (citing 20 C.F.R. §§ 404.1520, 416.920)); *see also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Judge Knowles's Report affirms the ALJ's determination that Plaintiff's claim fails at step two of the evaluation process. (Doc. No. 16 at 25–28.) Step two of the evaluation process requires the ALJ to determine whether Plaintiff has a medically determinable impairment that is "severe" or a combination of impairments that are "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). An impairment is considered "severe" if it significantly limits an individual's ability to perform basic work activities for a minimum of twelve consecutive months. *Id.* § 404.1521; SSR 85-28, 1983-1991 Soc. Sec. Rep. Serv. 390 (Jan. 1, 1985). The ALJ correctly stated in his opinion that an impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight

abnormalities that would have no more than a minimal effect on an individual's ability to work. (Tr. 18 (citing 20 § C.F.R. 404.1521; SSR 85-28; SSRs 96-3p, 96-4p, 61 Fed. Reg. 34468 (July 2, 1996).) If the ALJ finds the claimant does not have a severe impairment or combination of impairments, the inquiry ends there. 20 C.F.R. § 404.1520(a)(4). Here, the ALJ found Plaintiff did not have a "severe" impairment on the date last insured. (Tr. 17–27.) Plaintiff objects to the ALJ's findings as to his mental impairment. (Doc. No. 18. at 5–15.)

*A. Determination that Plaintiff Did Not Suffer From a Severe Mental Impairment*

Plaintiff objects to the ALJ's finding of no severe mental impairment on or before his date last insured, arguing the ALJ's determination is not supported by substantial evidence. (Doc. No. 18 at 8–9.) Specifically, Plaintiff asserts the sole reason the ALJ did not consider Dr. Gale's report was because Dr. Gale's examination was arranged by Plaintiff's brother and attorney. (*Id.*) Additionally, Plaintiff objects to the Commissioner's failure to obtain a consultative mental evaluation at the initial or reconsideration levels of Plaintiff's disability claims, noting that the two non-examining physician statements the Commissioner obtained did not reference Dr. Gale's report and thus were insufficient to determine severity. (Doc. No. 18 at 9.)

An ALJ satisfies the substantial evidence requirement when he explains the reasons for crediting or rejecting certain evidence. *Consolidation Coal Co. v. McMahon*, 77 F.3d 898, 901 (6th Cir. 1996) (citation omitted). However, it is improper to reject the favorable opinion of a consulting physician solely because the claimant's representative arranged the examination. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 n.8 (6th Cir. 1989) (noting that the decision of a lawyer to send a client to a doctor when the client's capacity to care for himself is questionable is not fundamentally improper).

9

Here, the Court finds that the ALJ properly explained his reasons for finding no severe mental impairment. Moreover, this finding was supported by substantial evidence in the record because (1) the ALJ had substantial evidence to assess the credibility of Dr. Gale's retroactive diagnosis, and (2) the ALJ was not required to obtain consultative medical opinions or document the application of the "special technique" specified in federal regulations for evaluating mental impairments.

First, the ALJ noted that Dr. Gale—who only examined Plaintiff once—amended his 2009 examination report one year later to retroactively diagnose the start date of Plaintiff's impairments as 1970, before Plaintiff's date last insured. (Tr. 21, 579.) The ALJ found this retroactive diagnosis lacked credibility, citing an extensive list of conflicting evidence from other sources, including:

> (1) [Dr. Gale's] own notes, reports, and findings, [sic] (2) Plaintiff's school records (being in regular classes, getting mostly As and Bs with the occasional C, graduating high school just below the midline of his class, being accepted into university, and completing three years of university); (3) Plaintiff's high school IQ score of 75; (4) the fact that Plaintiff's physicians and attorney allowed Plaintiff to make decisions on his own behalf and sign medical and legal documents without a guardian; (5) Plaintiff's ability to adapt after he was diagnosed with cancer and after his mother died; (6) the fact that neither his parents nor his brother Allan (the family members with whom Plaintiff has lived) thought that Plaintiff was disabled or sought assistance for him; (7) Plaintiff's ability to care for himself; (8) Plaintiff's appropriate social interactions; (9) Plaintiff's ability to accurately recount his medical and work history; and (10) Plaintiff's activities of daily living.

(Doc. No. 16 at 22 (citing Tr. 22–25).)

As such, Plaintiff's reliance on *Blankenship* is misplaced. In that case, the Sixth Circuit held that it was improper to reject the consulting physician's opinion where the only evidence relied upon was the fact that the claimant's representative had arranged the examination. *Blankenship*, 874 F.2d at 1122 n.8. Though in this case the ALJ did refer to Dr. Gale as a "hired

gun," the ALJ also relied on substantial evidence in the record in rejecting Dr. Gale's opinion. (Tr. 21–25.) Accordingly, the Court finds no error in the ALJ's determination that Dr. Gale's retroactive diagnosis was not credible.

Second, as to Plaintiff's contentions that the ALJ failed to obtain consultative medical opinions and failed to document application of the "special technique" required for evaluating mental impairments (Doc. No. 18 at 9), the Court finds Plaintiff misinterprets the applicable regulations. In evaluating mental impairments, the Commissioner must take "every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment" prior to making the determination that "an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment." 42 U.S.C. § 421(h) (2012). If the medical evidence in the record is insufficient, regulations allow for the Commissioner to arrange a consultative mental evaluation. 20 C.F.R § 404.1517. If the claimant is determined to have a mental impairment, regulations specify a "special technique" to be used for documenting the evaluation of its severity. 20 C.F.R. § 404.1520a. The first step of this "special technique" requires a determination of whether the claimant has a "medically determinable impairment." *Id.* § 404.1520a(b)(1).

The Sixth Circuit has held that an ALJ has discretion to determine whether an additional evaluation is required. *Foster v. Halter*, 279 F.3d 348, 355–56 (6th Cir. 2001); *see also Landsaw*, 803 F.2d at 214 ("The regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient information."). In *Foster*, the court held that an ALJ did not abuse his discretion when he refused a claimant's request for additional testing given that there was

11

already sufficient testimony in the record for the ALJ to evaluate her mental condition. 279 F.3d at 356. Here, the ALJ found no disabling mental impairment based on sufficient evidence in the record as explained above. (*See* Tr. 17–25.) As such, the Court finds that the ALJ was not required to arrange a consultative mental examination. Further, the ALJ could not have been required to document the severity of the impairment where he found no mental impairment existed.

### B. Weight Given to Dr. Gale's Consultative Opinion

Plaintiff's next objection is similar to the previous objection, but here Plaintiff argues that the ALJ employed "speculative" rather than proper evidence-based reasoning. (Doc. No. 18 at 9–11.) Plaintiff asserts (1) that Dr. Gale's opinions should be accorded more weight than other record evidence and (2) that the ALJ's determination that Plaintiff did not have a severe impairment because his mental impairment did not meet or equal a listed impairment was mistaken. (*Id.*)

A consulting physician's opinion is not entitled to the deference due a treating physician, and a non-examining physician is entitled to the least weight. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Grecol v. Halter*, 46 F. App'x, 773, 775 (6th Cir. 2002). However, even the opinion of a treating physician can be rejected if the ALJ articulates sound reasons. *E.g.*, *Bogle v. Sullivan*, 998 F.2d 342, 347–48 (6th Cir. 1993); *see also Her v. Comm'r*, 203 F.3d 388, 390–91 (6th Cir. 1999) (upholding an ALJ's rejection of the uncontradicted opinion of claimant's consulting psychologist because it was inconsistent with other record evidence). The ALJ may not reject a medical opinion simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation. *Blankenship*, 874 F.2d at 1121. If substantial evidence relied on by the ALJ outweighs speculation by the ALJ, the ALJ's decision

12

is proper. *See Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 392 (6th Cir. 2005) (upholding an ALJ's finding for repayment of benefits as supported by substantial evidence even though the ALJ speculated as to allocation of future assets).

The Court finds the ALJ's decision to discount Dr. Gale's opinion was supported by fully articulated and substantial evidence. As previously explained, there was substantial evidence in the record, which was adequately explained in the ALJ's opinion, to properly discount Dr. Gale's retroactive diagnosis. *See supra* Part III.A. Furthermore, while the Court acknowledges that certain findings of the ALJ may have been based on speculation, these potential missteps are not fatal. The ALJ may have speculated that Plaintiff's now deceased parents did not believe Plaintiff was mentally impaired based on a letter from Plaintiff's brother, stating that it was "apparent to all, except to our parents and especially our mother, that Gary did not function fully as an adult." (Tr. 23, 124.) However, this speculation does not diminish the alternative substantial evidence supporting the ALJ's decision to discount Dr. Gale's opinion.

Plaintiff also claims that the ALJ improperly discounted Dr. Gale's opinion based on methodology and observations, as evidenced by the ALJ's characterization of Dr. Gale's opinion as "a blatant attempt to subvert the decision-making process." (Tr. 23.) Again, however, the Court finds the ALJ's decision to discount Dr. Gale's opinion was supported by substantial evidence. *See supra* Part III.A. Accordingly, the Court finds that any speculation by the ALJ does not outweigh the substantial evidence the ALJ properly relied on in determining the lack of credibility of Dr. Gale's opinions.

As to the second part of Plaintiff's objection—that the ALJ mistakenly reasoned that Plaintiff did not have a severe impairment because his mental impairment did not meet or equal a listed impairment— the determination of whether a claimant's impairments meet or equal a

13

listed impairment occurs at step three of the evaluation process. 20 C.F.R. § 404.1520(a)(4)(iii). However, if, at any step, the claimant is found not disabled, the process ends and the remaining steps are not evaluated. *Id.* § 404.1520(a)(4).

Here, the ALJ determined that Plaintiff did not have a disability at step two of the analysis, thus the ALJ was under no obligation to analyze Plaintiff's claim at step three. Though the ALJ cursorily addressed Plaintiff's listing contentions, he did so "in the alternative," which does not affect his step-two finding of no severe impairment. Since the Court finds no error in the ALJ's step-two evaluation, the Court need not evaluate the ALJ's alternative step-three analysis.

### C. Onset Date of Plaintiff's Alleged Disability

Plaintiff objects to the ALJ's finding that Plaintiff's mental impairments did not exist before his date last insured of December 31, 2006, by asserting that the ALJ failed (1) to properly infer an onset date prior to the date of the first recorded medical examination, and (2) to call on the services of a medical advisor, as directed by SSR 83-20. (Doc. No. 18 at 14.)

SSR 83-20 "applies only when there has been a finding of disability and it is necessary to determine when the disability began." *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997). When there is "no finding that the claimant is disabled as a result of his mental impairment or any other impairments or combination thereof, no inquiry into onset date is required. The only necessary inquiry is whether the claimant was disabled prior to the expiration of his insured status." *Id.*

Here, because the ALJ properly discounted Dr. Gale's opinions and lay witness testimony concerning Plaintiff's mental impairments, the ALJ was not required to accept a retroactive onset date of 1970. As the Court has found the ALJ's decision that no severe impairment existed was

14

supported by substantial evidence, no analysis regarding whether the onset date was properly determined is required.

IV. CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Report (Doc. No. 16), **DENIES** Plaintiff's Motion (Doc. No. 17), and **AFFIRMS** the decision of the Commissioner. The Commissioner's Motion to Stay Because of Lapse of Appropriations (Doc. No. 21) is **TERMINATED AS MOOT.** This Order terminates this Court's jurisdiction over the above-styled action, and the case is **DISMISSED.**

It is so ORDERED.

Entered this the ___5___ day of March, 2014.

---
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT